# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| DON MITCHELL WILBORN, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 4:15-cv-02071-JHE |
| DOUGLAS A. TRANT, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Don Mitchell Wilborn ("Wilborn"), a prisoner proceeding *pro se*, brings this legal malpractice action against Defendants Douglas A. Trant ("Trant") and Whitt, Cooper, Trant & Hendrick, P.A. (the "Firm"). (Doc. 1). Defendants have moved for summary judgment on the basis Wilborn has not provided expert testimony in support of his claim, as required by Alabama law. (Doc. 158). As described below, Wilborn has failed to file a response in opposition to the motion for summary judgment. For the reasons stated below, the motion is **GRANTED**.

### I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 31).
  The undersigned notes that on November 24, 2017, Plaintiff filed a motion to withdraw his previously-given consent. (Doc. 140). However, Plaintiff subsequently withdrew that motion. (*See* doc. 150 at 5).

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Background[2]

Wilborn, who is a federal prisoner incarcerated in the Federal Correctional Institution in Estill, South Carolina ("FCI Estill"), filed the complaint in this action on November 16, 2015,[3] alleging Defendants, an attorney and a law firm, committed legal malpractice in representing him in his federal postconviction proceeding under 28 U.S.C. § 2255.[4] (Doc. 1). Wilborn failed to pay the filing fee or file a motion for leave to proceed *in forma pauperis*, and the undersigned ordered him to correct this deficiency. (Doc. 2). On December 10, 2015, Wilborn filed a motion for leave to proceed *in forma pauperis* and an amended complaint. (Docs. 3 & 4). The undersigned granted the motion for leave to proceed *in forma pauperis* and ordered service of the amended complaint on Defendants. (Docs. 5 & 8). Defendants answered the amended complaint on February 29, 2016. (Doc. 15). On April 8, 2016, the undersigned entered a scheduling order setting the deadline for Wilborn's expert disclosures at August 8, 2016, and the dispositive motion deadline at November 8, 2016. (Doc. 23).

---

[2] The resolution of Defendants' motion for summary judgment involves two separate but related issues: Wilborn's failure to provide expert testimony in support of his legal malpractice claim and his lack of response to the motion for summary judgment. The undersigned has included this background section to illustrate the somewhat convoluted development of both of these issues, as well as the undersigned's repeated attempts to accommodate Wilborn due to his status as a an incarcerated *pro se* litigant.

[3] Because Wilborn is an incarcerated *pro se* litigant, he is entitled to the benefit of the "mailbox rule," under which documents he files are deemed to be filed on the day they were delivered to prison authorities for mailing. *See Garvey v. Vaughn*, 993 F.2d 776 (11th Cir. 1993). Accordingly, this memorandum opinion's references to the dates on which Wilborn filed a particular document reflect the date that appears on the document itself (if indicated), not the date on which the court received the document.

[4] Wilborn also filed a legal malpractice action in this court against his trial counsel in the underlying criminal action. *See Wilborn v. Tuten, et al.*, Case No. 4:16-cv-00106-VEH. On July 12, 2017, Wilborn's action was dismissed for lack of subject-matter jurisdiction. *See id.* at docs. 35 & 236.

**A. Initial Discovery Issues**

On April 8, 2016, at Wilborn's request, the Clerk of Court issued a subpoena directing nonparty Laura Hodge ("Hodge"), an Assistant United States Attorney for the Northern District of Alabama, to produce "All discovery materials in United States v. Wilborn, 4:11-cr-00470-VEH-HGD-1, including but not limited to, audio recordings, video surveillance, statements of codefendants (Form 302s): to be provided in CD/DVD format, accessible in Quick View Plus software, where available." (Doc. 48 at 4).

On June 9, 2016, Wilborn filed motions to compel production by nonparties Cullman County Sheriff Matt Gentry ("Gentry") and Assistant United States Attorney Laura Hodge ("Hodge"). (Docs. 47, 48 & 49). The undersigned entered separate orders to show cause for each of these motions. (Docs. 51, 52 & 53). On June 17, 2016, the Cullman County Sheriff's Office filed a motion to quash the subpoena directed to Gentry. (Doc. 54).

On June 14, 2016, Wilborn filed a motion to extend the deadlines in the scheduling order. (Doc. 55). The motion was received by the court on June 20, 2016. (*See id.*). Wilborn's motion specifically requested sixty to ninety days of additional time, and particularly noted his looming expert witness disclosure deadline. (*Id.* at 6). Because of the pending motions to compel and quash, the undersigned suspended all deadlines during those motions' pendency. (Doc. 57).

On June 27, 2016, the undersigned denied the motion to compel directed to Hodge without prejudice, as it appeared that Wilborn had not complied with the Department of Justice's regulations in requesting material. (Doc. 60). The other motions remained pending.

On August 23, 2016, the undersigned held a telephone conference to discuss the pending motions. At that conference, Defendants suggested that, because this legal malpractice action requires Wilborn to offer expert testimony on the standard of care, it would be appropriate to defer

4

ruling on the pending motions until there was some indication that Wilborn would actually be able to retain an expert witness and offer that testimony. The undersigned agreed. Therefore, on August 24, 2016, the undersigned ordered Wilborn to designate an expert on the applicable legal standard of care by September 23, 2016, or show cause why he had not done so. (Doc. 75). The undersigned deferred ruling on the pending discovery motions until Wilborn made this designation. (*Id.*).

### B. Wilborn's Expert Designation

Wilborn responded to this order on August 31, 2016, arguing the order was ineffective because all deadlines in the case had been suspended by previous order, and that he could not reasonably submit an expert report without the discovery that was the subject of these motions to compel. (Doc. 77). On September 15, 2016, in an order on several additional discovery motions, the undersigned informed Wilborn he need not submit an expert report, only designate an expert; the undersigned reminded Wilborn the September 23, 2016 deadline was still in effect. (Doc. 84 at 3-4).

Wilborn submitted two documents on September 23, 2016. The first of these was a status update indicating Wilborn had consulted with two experts and attempted to contact another, but neither of them were able to review materials and provide a report by the deadline; consequently, he requested an additional thirty to forty-five days to make his designation. (Doc. 86). The second was a purported expert designation, which was a list of experts Wilborn designated "subject to their review of all discovery materials and approval, and subject to revision and/or substitution of this designation," as well as "any other expert witness identified after this filing." (Doc. 87). On October 7, 2016, finding the latter document "so non-committal that it cannot reasonably be considered a designation," the undersigned struck it. (Doc. 89 at 2). In the same order, the

5

undersigned granted Wilborn an additional thirty days to designate his expert, notwithstanding it did not appear Wilborn had been diligent in seeking out an expert. (*Id.* at 2-3).

On November 4, 2016, Wilborn provided another status update. (Doc. 97). In that update, Wilborn submitted a number of attempts to communicate with attorneys, none successfully securing one as an expert witness. (*Id.*). Wilborn requested an additional thirty days to designate his expert. (*Id.*). The undersigned granted that request. (Doc. 99).

On December 16, 2016, Wilborn designated Dennis W. Hartley as an expert witness. (Doc. 100). Wilborn also designated Mark I. Harrison and Scott Harwell, but acknowledged neither had been retained; Harrison could not be retained until Wilborn secured counsel, and Harwell could not be retained until his fee was paid. (*Id.*). Wilborn attached a letter from Hartley in which Hartley stated he had agreed to provide an expert report. (Doc. 100-1). Wilborn also filed a supplement to his designation on December 21, 2016, in which he attached an additional letter from Hartley dated prior to Wilborn's expert designation deadline and confirming Hartley's agreement to review the discovery concerning Wilborn's former counsel's performance. (Doc. 101).

On March 6, 2017, in an omnibus order, the undersigned denied Defendants' motion to strike Wilborn's expert designation, (doc. 102). (Doc. 108 at 11-12). In the same order, the undersigned disposed of the pending motions to compel and quash. (*Id.* at 1-10).

**C. Subsequent Discovery Issues and Appeal**

On March 17, 2017, Wilborn renewed his motion to compel production by Hodge. (Doc. 109). Hodge responded with an additional motion to quash. (Doc. 115). After briefing on the motion, (docs. 117, 118, 119, 120, 121 & 122), and a telephone conference, the undersigned denied Wilborn's motion to compel on June 12, 2017. (Doc. 125). In that order, the undersigned noted

6

that, although Wilborn had premised his need for the information he sought from the U.S. Attorney's Office (i.e., the discovery in his criminal case) on his inability to submit an expert report without it, he had never explained in any way the material's relevance to the allegations in this case, which is premised on postconviction representation by different counsel. (*Id.* at 9-10).

Following this order, the undersigned entered a new scheduling order. (Doc. 127). After Wilborn requested on August 7, 2017, the scheduling order be modified due to his inability to review discovery material due to FCI Estill policies, his inability to communicate with his expert due to issues with the facility's copy machine, and closures to the law library and word processing equipment, (*see* doc. 130), the undersigned modified that scheduling order on October 5, 2017. (Doc. 133). As a result, Wilborn's expert reports under Fed. R. Civ. P. 26(a)(2)(B) were due by December 8, 2017, and the dispositive motion deadline was extended to February 8, 2018. (*Id.*).

On December 11, 2017, this court received a notice of interlocutory appeal, ostensibly filed by Wilborn on August 9, 2017. (Doc. 142). The notice, which Wilborn had filed in the Eleventh Circuit, was stamped "December 1, 2017." (*Id.*). The subject of Wilborn's appeal was the undersigned's June 12, 2017, denial of his motion to compel, (doc. 125).

With the appeal pending, Defendants filed the instant motion for summary judgment, premised on Wilborn's failure to come forward with expert testimony, on February 6, 2018. (Doc. 158). The undersigned set a briefing schedule on the motion, with Wilborn's response due by February 27, 2018. (Doc. 159). On February 12, 2018, citing the appeal, Wilborn moved to suspend all deadlines. (Doc. 160). Wilborn also stated he had not received a copy of the motion for summary judgment. (*Id.*). Although the undersigned noted that the appeal was likely frivolous because the Eleventh Circuit lacked jurisdiction over it and that the appeal only questionably related to the motion for summary judgment, on February 21, 2018, the undersigned granted

Wilborn's motion to the extent Wilborn's response deadline was suspended during the pendency of the appeal. (Doc. 162). Two days later, on February 23, 2018, the Eleventh Circuit *sua sponte* dismissed Wilborn's appeal for lack of jurisdiction. (Doc. 163).

**D. Wilborn's Response to the Motion for Summary Judgment**

On February 28, 2018, the court received a motion for an extension of time to respond to the motion for summary judgment filed by Wilborn on February 22, 2018, prior to receiving either the order suspending the response deadline or the Eleventh Circuit's order. (Doc. 164). In that motion, Wilborn again stated he had not received a copy of the motion for summary judgment. (*Id.*). On March 5, 2018, the undersigned received correspondence from counsel for Defendants to Wilborn, enclosing another copy of the motion for summary judgment; that correspondence was made a part of the record. (Docs. 165 & 165-1). The undersigned then set a telephone conference to discuss Wilborn's issues receiving mail from the court and from Defendants, as well as a deadline to respond to the motion for summary judgment. (Doc. 166).

Prior to the telephone conference, on March 13, 2018, Wilborn moved again to stay all deadlines in this case, citing the fact he had filed a motion to reconsider in the Eleventh Circuit and arguing he should be permitted a stay until at least the expiration of time to petition the United States Supreme Court for a writ of certiorari.[5] (Doc. 167). At the March 21, 2018, telephone conference, Wilborn informed the court he had finally received a copy of the motion for summary judgment. Wilborn requested twenty-one additional days to respond to the motion for summary judgment. The same day, the undersigned denied the motion to stay but granted Wilborn thirty days — nine more than he had requested — to oppose the motion for summary judgment; this

---

[5] The Eleventh Circuit denied Wilborn's motion to reconsider on May 7, 2018. (Doc. 169).

8

made Wilborn's response due by April 20, 2018. (Doc. 168 at 1). To address Wilborn's alleged difficulties receiving mail from the court, and consistent with Wilborn's representations and the representations of the Bureau of Prisons ("BOP") for how mail is to be designated as legal mail, the undersigned directed the Clerk to designate the order "Legal Mail — Open only in the presence of the inmate." (*Id.* at 2). No opposition to the motion for summary judgment was timely received by the court.

On May 18, 2018, the undersigned received an email from counsel for the BOP regarding Wilborn's attempts to schedule depositions, which was made a part of the record. (Docs. 171 & 171-1). Wilborn moved for leave to respond to the email on May 22, 2016, and in that motion stated he had not received a copy of Defendants' reply to his response in opposition to their motion for summary judgment, which he stated was "currently before the Court." (Doc. 173 at 2-3). Noting that the court had not received a copy of Wilborn's response and that it was not before the court, the undersigned provided Wilborn until June 13, 2018 to refile his response. (Doc. 174). Again, this order was marked "Special Mail — Open only in the presence of the inmate."[6] (*Id.* at 1).

Rather than refiling his response, on June 12, 2018, Wilborn filed a "Supplemental Response in Opposition to Motion for Summary Judgment." (Doc. 175). That supplemental

---

[6] In the intervening period between this order and the previous order, Wilborn filed a motion to treat mail originating from this court as legal mail. (Doc. 169). Wilborn attached a decision in an inmate complaint appeal in which the BOP stated: "As explained to you in the Warden's response, staff are now trained to treat mail from the Clerk of the Courts as 'Special/Legal' mail as long as it is properly marked 'Special Main [sic]-Open only in the presence of the inmate.'" (*Id.* at 10). Although both "Legal Mail" and "Special Mail" are apparently interchangeable to designate a piece of mail as legal mail, (*see id.*), the undersigned adopted the "Special Mail" formulation to fully conform to the BOP's explanation.

response stated: "Mr. Wilborn does <u>not</u> wish to waive, or forfeit, any argument that the Defendants have waived, or forfeited, their right to respond by failing to timely file a reply to Mr. Wilborn's response in opposition to motion for summary judgment." (*Id.* at 1-2) (emphasis in original). Wilborn further purported to "incorporate by reference herewith his response in opposition to motion for summary judgment, (ECF No. [unk.]), and simply supplements his all-inclusive response in opposition to summary judgment, pages 23-24, related to his inability to conduct video depositions." (*Id.* at 2). The remainder of the supplemental response addressed only Wilborn's difficulties in obtaining video depositions. (*See id.* at 2-5).

On June 26, 2018, the undersigned set a final deadline for Wilborn to refile his response. (Doc. 176). That order stated:

> As explicitly stated in the May 30, 2018 order Wilborn references, "[t]he Court has received no opposition to Defendants' motion for summary judgment as of the date of this Order." (Doc. 174 at 1). Nor has it received Wilborn's response since that date. There is no "all-inclusive response in opposition to summary judgment" to supplement, nor to incorporate by reference. As it stands, per the docket in this case, Defendants' motion for summary judgment is unopposed.
>
> [. . .]
>
> Assuming the accuracy of Wilborn's earlier representations he has filed a response that the Court has simply not received, Wilborn has ignored the undersigned's instructions to resubmit that response, and has instead simply attempted to incorporate it by reference, apparently to deny Defendants the opportunity to submit a reply brief. This does not help Wilborn at all with his primary problem, which is that the undersigned cannot consider material that has not been received by the Court.
>
> **Although Wilborn has failed to comply with the instructions in the previous order, Wilborn will receive one final additional opportunity to resubmit his response to the motion for summary judgment. He must do so by July 10, 2018. Wilborn is advised this is his last opportunity to put his response before the Court. If Wilborn fails to submit a response by the deadline, the undersigned will treat Defendants' motion for summary judgment as unopposed and will rule on it accordingly.**

10

(*Id.* at 1-3) (emphasis in original). The undersigned also directed Defendants to file a status report indicating whether they had received Wilborn's response. (*Id.* at 3). Once again, this order was marked "Special Mail — Open only in the presence of the inmate." (*Id.*).

Defendants filed a status report on July 2, 2018, indicating they had not received Wilborn's response. (Doc. 177). As of the date of this memorandum opinion, no opposition to the motion for summary judgment has been received by the court.

### III. Summary Judgment Facts[7]

In December 2011, Wilborn was indicted for conspiracy to distribute methamphetamine and distribution of methamphetamine. (Doc. 158-1 at ¶ 3). *See also USA v. Wilborn, et al.,* Case No. 4:11-cr-00470-VEH-HNJ. Wilborn was represented by an attorney unaffiliated with Defendants in that proceeding. (Doc. 158-1 at ¶ 3). Wilborn entered into a plea agreement on those charges, under the terms of which he agreed to plead guilty to the conspiracy charge and serve 240 months in prison. (*Id.* at ¶ 4). Wilborn pleaded guilty and began his sentence, after which he retained Trant, who is a partner in the Firm, to represent him in a postconviction proceeding under 28 U.S.C. § 2255 to vacate or reduce his sentence. (*Id.* at ¶ 5). Trant researched the viability of a § 2255 motion under the facts of the case. (*Id.* at ¶ 6). Based on his experience, research, and professional judgment, Trant determined a motion to vacate would have a reasonable chance of success and would not otherwise prejudice Wilborn. (*Id.* at ¶ 8). The motion, which was premised on the contentions that Wilborn's sentence was impermissibly based on prior drug

---

[7] Because Wilborn has not responded to the motion for summary judgment, he has failed to dispute any of the facts Defendants cite. Therefore, the undersigned treats the facts contained in Defendants' motion as undisputed. *See* FED. R. CIV. P. 56(e)(2) (when a party fails to address another party's assertion of fact, the court may consider that fact undisputed for the purposes of summary judgment).

11

convictions and that Wilborn's trial counsel was ineffective, was ultimately unsuccessful. (*Id.* at ¶ 9).

### IV. Analysis

As discussed above, despite being provided with numerous extensions of time, Wilborn has failed to file any opposition to Defendants' motion for summary judgment beyond his "supplemental response," (doc. 175). Therefore, consistent with the warning in the previous order, (*see* doc. 176 at 3), the undersigned treats Defendants' motion as unopposed (although the supplemental response is addressed further below, *see infra* at n.11). However, "summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Therefore, the court must consider the motion on its merits and review the evidence in support of the motion to determine whether the Defendants have met their burden under Rule 56.

Wilborn's amended complaint is founded on the allegation he hired Trant for his § 2255 proceeding based on Trant's misrepresentation to Wilborn he would receive a substantial reduction in his sentence. (Doc. 3 at ¶ 11). However, Trant failed to uncover in his research binding circuit precedent that foreclosed the arguments he made in the § 2255 motion. (*Id.* at ¶¶ 12-19). The district court denied the § 2255 motion on this basis, as well as because Wilborn had affirmatively waived his right to appeal and to collaterally attack the plea agreement. (*Id.* at ¶ 19). On these allegations, Wilborn asserts a count under the Alabama Legal Service Liability Act, (*id.* at ¶¶ 27-32); a declaratory judgment count seeking to allow him the opportunity to file a second or successive § 2255 claim, (*id.* at ¶¶ 33-41); a fraudulent misrepresentation count, (*id.* at ¶¶ 42-50); a conversion count, (*id.* at ¶¶ 51-54); a negligence count, (*id.* at ¶¶ 55-58); a breach of contract

12

count, (*id.* at ¶¶ 59-65); a wantonness count, (*id.* at ¶¶ 66-69); and a negligent infliction of emotional distress count, (*id.* at ¶¶ 70-74).

Although Wilborn's complaint nominally contains separate counts, each is centered on Defendants' legal malpractice. Under Alabama law, legal malpractice claims are governed by the Alabama Legal Service Liability Act, ("ALSLA"), ALA. CODE § 6-5-570 *et seq*. The ALSLA specifically provides: "[t]here shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein." ALA. CODE § 6-5-573. "The [A]LSLA 'embraces'—and thus supersedes—every 'form of action in which a litigant may seek legal redress for a wrong or an injury and *every legal theory of recovery*, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future'" for legal malpractice. *Free v. Lasseter*, 31 So. 3d 85, 89 (Ala. 2009) (quoting ALA. CODE § 6-5-572(1)) (emphasis in original). Therefore, regardless of the theories his complaint purports to assert, Wilborn's only claim against Defendants is a single legal service liability action under § 6-5-573.[8] *See id*. (holding that common-law claims and declaratory judgment claim arising out of legal services must be recast as a unitary cause of action under the ALSLA).

To prove legal malpractice under Alabama law, a plaintiff must prove the same elements that must be proven in an ordinary negligence suit: a duty, a breach of that duty, an injury, that the injury was proximately caused by the breach, and damages. *Independent Stave Co. v. Bell,*

---

[8] On May 21, 2018, the undersigned denied Wilborn leave to amend his complaint to add a count of unjust enrichment and a count of breach of fiduciary duty on the basis the amendment would be futile; both proposed counts would be duplicative of the ALSLA count already contained in his amended complaint, (doc. 3 at ¶¶ 27-32). (Doc. 172 at 1-5).

*Richardson & Sparkman, P.A.*, 678 So. 2d 770, 772 (Ala. 1996). Under the ALSLA, breach is shown by a legal service provider's failure to adhere to the standard of care. *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1190 (N.D. Ala. 2012) (citing *Independent Stave*, 678 So. 2d at 772). The ALSLA sets out that "[t]he applicable standard of care against the defendant legal service provider shall be such reasonable care and skill and diligence as other similarly situated legal service providers in the same general line of practice in the same general area ordinarily have and exercise in a like case." ALA. CODE § 6-5-580(1).

Alabama law generally requires expert testimony to show that a defendant attorney's specific actions breached the standard of care. *Green v. Ingram*, 794 So. 2d 1070, 1072 (Ala. 2001). Consequently, "[w]hen a defendant in a legal malpractice action has moved for a summary judgment and has properly supported the motion with evidence that makes a prima facie showing that the defendant did not act negligently, then, in order to defeat the summary judgment motion, the plaintiff must rebut the defendant's prima facie showing with expert testimony indicating that the defendant lawyer did act negligently." *McDowell v. Burford*, 646 So. 2d 1327, 1328 (Ala. 1994). The only exception to this rule is the "common knowledge" exception, where the breach of the standard of care "is so apparent as to be understood by a layperson and [would] require[] only common knowledge and experience to understand it." *Valentine v. Watters*, 896 So. 2d 385, 394 (Ala. 2004).

Defendants have supported their motion with Trant's affidavit, (doc. 158-1).[9] In that affidavit, Trant states he has been a practicing attorney since 1978 and has personally had success

---

[9] Alabama courts have permitted an attorney accused of malpractice to make out a *prima facie* case of non-negligence by offering his own affidavit as expert testimony. *See Peoples v. Nassaney*, 638 So. 2d 879, 880 (Ala. 1994). Further, there appears to be no federal barrier to a

14

having sentences of clients reduced and/or vacated in cases similar to Wilborn's. (*Id.* at ¶¶ 2, 7). Trant further states, based on his research and experience, he made the professional determination that "a motion to vacate had a reasonable chance of success, and would not otherwise prejudice Wilborn if it was not successful." (*Id.* at ¶ 8). Based on his experience as an attorney with approximately forty years of experience practicing criminal law, Trant opines his representation of Wilborn satisfied the ALSLA standard of care. (*Id.* at ¶ 11). This is sufficient to make out a prima facie case of non-negligence.

Defendants assert this is not the type of case in which the "common knowledge" exception applies, and therefore Wilborn must oppose the motion for summary judgment with expert testimony. (Doc. 158 at 9-10). The undersigned agrees. Alabama courts have applied the common knowledge exception only non-complex scenarios such as missing a filing deadline and misrepresenting the attorney's expertise, *Valentine*, 896 So. 2d at 394; failing to notify the client of a ruling on a motion in time for the client to timely file an appeal, *Guyton v. Hunt*, 61 So. 3d 1085, 1090 (Ala. Civ. App. 2010); or misrepresenting to a client that a non-refundable retainer was enforceable under Alabama law when it was undisputedly unenforceable, *Roberts v. Lanier*, 72 So. 3d 1174, 1187 (Ala. 2011), *as modified on denial of reh'g* (June 10, 2011). This case, by contrast, involves Trant filing what Wilborn alleges was a meritless § 2255 motion. The logical result of this claim is that Wilborn would have to prove the § 2255 motion was in fact meritless. *See Valentine*, 896 So. 2d at 394 n.5 (noting a party must essentially prove, as a "case within a

---

party serving as his own expert. *See, e.g., Malloy v. Monahan*, 73 F.3d 1012, 1016 (10th Cir. 1996) (allowing expert testimony from plaintiff on sufficient showing of expertise).

case," the merits of the underlying legal issue). In other words, the issue in this case is whether Trant appropriately exercised his professional judgment in the § 2255 proceeding. *Cf. Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C.*, 42 So. 3d 667, 684 (Ala. 2009), *as modified on denial of reh'g* (Jan. 22, 2010). This would necessarily involve delving into the nuances of federal postconviction proceedings, the applicability of the waivers in Wilborn's plea agreement, and whether the arguments raised in the § 2255 motion were the type an attorney would not have made had he employed reasonable care, skill, and diligence, none of which are within common knowledge and experience. Consequently, the exception is inapplicable, and Wilborn is required to present expert testimony in order to prevail in this case.

To that end, Defendants allege Wilborn has failed to provide an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B) by his December 8, 2017 deadline to do so.[10] (Doc. 158 at 10). That Rule requires that an expert disclosure be accompanied by:

---

[10] As described above, Wilborn designated an expert in December 2016 in compliance with a series of orders. Nothing in those orders absolved Wilborn of the obligation to submit an expert report under the Rule. To the contrary, the undersigned noted Wilborn was not required to submit a "report under Fed. R. Civ. P. 26(a)(2)(B) at this time." (Doc. 89 at 3) (emphasis added). Wilborn's designation specifically stated Hartley's expert report, "which conforms to all the requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, will be disclosed in accordance with further directives of this honorable Court," (doc. 100 at ¶ 1), and Wilborn included similar language as to the experts whom he was then exploring the option of retaining, (*id.* at ¶¶ 2-3). Hartley's letter to Wilborn also sets out that he expects to provide an expert report. (Doc. 100-1 at 1). When Defendants challenged Wilborn's expert designation, the undersigned noted "[t]he intention behind the requirement [to designate an expert], as heavily implied by several of the undersigned's orders, was to ensure Wilborn could make a threshold showing he had secured the services of an attorney who could, at least debatably, provide an opinion as to the standard of care." (Doc. 108 at 12). Finally, the amended scheduling order explicitly includes a deadline for "disclosures of expert witnesses—including a complete report under Fed. R. Civ. P. 26(a)(2)(B) from any specially retained or employed expert," (doc. 127 at 1), and the order amending the scheduling order retains this language, (doc. 133 at 3-4).

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the data or other information considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). A party who "fails to provide information . . . as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (upholding district court's refusal to allow expert witnesses to testify at trial when their reports were inadequate under Rule 26(a)(2)(B)); *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (affirming exclusion of expert witness's testimony when no report in compliance with Rule 26(a)(2)(B) was provided).

Wilborn's failure to respond to the motion for summary judgment leaves Defendants' allegation he has failed to provide an expert report unrebutted.[11] Wilborn has not provided

---

[11] Even if the undersigned considered Wilborn's supplemental response as opposition to the motion for summary judgment, it also would not support his ability to present expert testimony. The supplemental response details Wilborn's efforts to set up video depositions at FCI Estill, dating back to June 2016. On June 22, 2016, the undersigned granted Wilborn's motion for leave to take depositions by video. (Doc. 58). Wilborn indicates he attempted to find out the procedures for doing so on July 1, 2016, but was ultimately informed by BOP Counselor Sheila A. Smith that he could not do so. (Doc. 175 at 2-3). Wilborn's supplemental response does not contain any information about any further efforts to set up depositions by videoconference until February 15,

substantial justification for failing to provide an expert report,[12] nor has he made any argument his lack of disclosure was harmless. Therefore, under the "unambiguous terms of Rule 37(c)," *see Cooper*, 390 F.3d at 728, any expert testimony Wilborn might purport to offer in opposition to the instant motion or at trial is inadmissible. And since Wilborn has not responded to the motion for summary judgment, there is no evidence in the record, admissible or otherwise, to oppose Trant's affidavit. Because Wilborn has not provided (and cannot provide) expert testimony rebutting Defendants' prima facie showing of non-negligence, Defendants' motion for summary judgment is due to be granted.

---

2018, when he discovered that hearings are routinely conducted at FCI Estill by videoconference. (*Id.* at 3). From there, Wilborn states he attempted to complete the required form to set up depositions, but encountered numerous roadblocks set up by the BOP. (*Id.* at 3-4).

The undersigned notes Wilborn pointed to potential difficulties with setting up depositions in a motion to clarify on July 5, 2016. (Doc. 63). The undersigned addressed this motion on March 6, 2017, stating the parties were expected to resolve logistical issues among themselves, but "[i]f the Bureau of Prisons requires an order beyond what the Court has previously entered, Wilborn may move for such an order when the prospect becomes more than hypothetical." (Doc. 108 at 11). Wilborn never presented the issue to the court again until his supplemental response, which was filed on June 12, 2018, and largely concerns events that happened after the February 8, 2018 discovery deadline had passed, (*see* doc. 133). Wilborn does not account at all for the fifteen-month period between the order and the supplemental response, during which he apparently knew that FCI Estill had denied him the ability to conduct depositions by videoconference. And, more importantly for the sake of this motion, Wilborn's supplemental response does not connect the issues with depositions to his lack of expert testimony.

To the extent Wilborn's supplemental response can be construed as requesting leave to conduct discovery after the deadline has passed, and thus as a request to amend the scheduling order out of time, Wilborn has not shown that he failed to file a motion prior to the close of discovery because of excusable neglect, nor that he had good cause for failing to meet the original deadlines. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013); FED R. CIV. P. 6(b)(1)(B). Therefore, that request is **DENIED**.

[12] Wilborn has generally stated he cannot submit an expert report without the discovery he has attempted to subpoena from Hodge. (*See* doc. 120 at 5-6). However, as the undersigned has previously noted, Wilborn has never explained why this is the case. (*See* doc. 125 at 9).

## V. Conclusion

For the reasons stated above, Defendants' motion for summary judgment, (doc. 158), is **GRANTED**. A separate order will be entered.

DONE this 13th day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE