## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| DON MITCHELL WILBORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:15-cv-02071-JHE |
| | ) | |
| DOUGLAS A. TRANT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Don Mitchell Wilborn ("Wilborn"), a prisoner proceeding *pro se*, brings this legal malpractice action against Defendants Douglas A. Trant ("Trant") and Whitt, Cooper, Trant & Hendrick, P.A. (the "Firm").  (Doc. 1).  Defendants have moved for summary judgment on the basis Wilborn has not provided expert testimony in support of his claim, as required by Alabama law.[2]  (Doc. 158).  Wilborn has responded in opposition, (doc. 182), and Defendants have filed a reply, (doc. 188).  For the reasons stated below, the motion is **GRANTED**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 31).
    On November 24, 2017, Plaintiff filed a motion to withdraw his previously-given consent. (Doc. 140).  However, Plaintiff subsequently withdrew that motion.  (*See* doc. 150 at 5).

[2] On September 13, 2018, the undersigned entered a memorandum opinion granting Defendants' motion for summary judgment and an order dismissing this action.  (Docs. 178 & 179).  For reasons discussed further below, that opinion and order have been vacated.  (*See* doc. 185).

to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Background[3]

Wilborn, who is a federal prisoner incarcerated in the Federal Correctional Institution in Estill, South Carolina ("FCI Estill"), filed the complaint in this action on November 16, 2015,[4] alleging Defendants, an attorney and a law firm, committed legal malpractice in representing him in his federal postconviction proceeding under 28 U.S.C. § 2255.[5] (Doc. 1). Wilborn failed to pay the filing fee or file a motion for leave to proceed *in forma pauperis*, and the undersigned ordered him to correct this deficiency. (Doc. 2). On December 10, 2015, Wilborn filed a motion for leave to proceed *in forma pauperis* and an amended complaint. (Docs. 3 & 4). The undersigned granted the motion for leave to proceed *in forma pauperis* and ordered service of the amended complaint on Defendants. (Docs. 5 & 8). Defendants answered the amended complaint on February 29, 2016. (Doc. 15). On April 8, 2016, the undersigned entered a scheduling order setting the deadline

---

[3] The resolution of Defendants' motion for summary judgment involves Wilborn's failure to provide expert testimony in support of his legal malpractice claim, and the necessity for the undersigned to address the motion for summary judgment a second time (after vacating the first memorandum opinion disposing of it) involves the related issue of Wilborn's initial lack of response to the motion for summary judgment. The undersigned has included this background section — reproduced in large part from the previous memorandum opinion — to illustrate the somewhat convoluted development of both of these issues, as well as the undersigned's repeated attempts to accommodate Wilborn due to his status as an incarcerated *pro se* litigant.

[4] Because Wilborn is an incarcerated *pro se* litigant, he is entitled to the benefit of the "mailbox rule," under which documents he files are deemed to be filed on the day they were delivered to prison authorities for mailing. *See Garvey v. Vaughn*, 993 F.2d 776 (11th Cir. 1993). Accordingly, this memorandum opinion's references to the dates on which Wilborn filed a particular document reflect the date that appears on the document itself (if indicated), not the date on which the court received the document.

[5] Wilborn also filed a legal malpractice action in this court against his trial counsel in the underlying criminal action. *See Wilborn v. Tuten, et al.*, Case No. 4:16-cv-00106-VEH (N.D. Ala.). On July 12, 2017, Wilborn's action was dismissed for lack of subject-matter jurisdiction. *See id.* at docs. 35 & 236.

for Wilborn's expert disclosures at August 8, 2016, and the dispositive motion deadline at November 8, 2016.  (Doc. 23).

**A. Initial Discovery Issues**

On April 8, 2016, at Wilborn's request, the Clerk of Court issued a subpoena directing nonparty Laura Hodge ("Hodge"), an Assistant United States Attorney for the Northern District of Alabama, to produce "All discovery materials in <u>United States v. Wilborn</u>, 4:11-cr-00470-VEH-HGD-1, including but not limited to, audio recordings, video surveillance, statements of codefendants (Form 302s): to be provided in CD/DVD format, accessible in Quick View Plus software, where available." (Doc. 48 at 4).

On June 9, 2016, Wilborn filed motions to compel production by nonparties Cullman County Sheriff Matt Gentry ("Gentry") and Assistant United States Attorney Laura Hodge ("Hodge").  (Docs. 47, 48 & 49).  The undersigned entered separate orders to show cause for each of these motions.  (Docs. 51, 52 & 53).  On June 17, 2016, the Cullman County Sheriff's Office filed a motion to quash the subpoena directed to Gentry.  (Doc. 54).

On June 14, 2016, Wilborn filed a motion to extend the deadlines in the scheduling order.  (Doc. 55).  The motion was received by the court on June 20, 2016.  (*See id.*).  Wilborn's motion specifically requested sixty to ninety days of additional time, and particularly noted his looming expert witness disclosure deadline.  (*Id.* at 6).  Because of the pending motions to compel and quash, the undersigned suspended all deadlines during those motions' pendency.  (Doc. 57).

On June 27, 2016, the undersigned denied the motion to compel directed to Hodge without prejudice, as it appeared that Wilborn had not complied with the Department of Justice's regulations in requesting material.  (Doc. 60).  The other motions remained pending.

On August 23, 2016, the undersigned held a telephone conference to discuss the pending motions. At that conference, Defendants suggested that, because this legal malpractice action requires Wilborn to offer expert testimony on the standard of care, it would be appropriate to defer ruling on the pending motions until there was some indication that Wilborn would actually be able to retain an expert witness and offer that testimony. The undersigned agreed. Therefore, on August 24, 2016, the undersigned ordered Wilborn to designate an expert on the applicable legal standard of care by September 23, 2016, or show cause why he had not done so. (Doc. 75). The undersigned deferred ruling on the pending discovery motions until Wilborn made this designation. (*Id.*).

**B. Wilborn's Expert Designation**

Wilborn responded to this order on August 31, 2016, arguing the order was ineffective because all deadlines in the case had been suspended by previous order, and that he could not reasonably submit an expert report without the discovery that was the subject of these motions to compel. (Doc. 77). On September 15, 2016, in an order on several additional discovery motions, the undersigned informed Wilborn he need not submit an expert report, only designate an expert; the undersigned reminded Wilborn the September 23, 2016 deadline was still in effect. (Doc. 84 at 3-4).

Wilborn submitted two documents on September 23, 2016. The first of these was a status update indicating Wilborn had consulted with two experts and attempted to contact another, but neither of them were able to review materials and provide a report by the deadline; consequently, he requested an additional thirty to forty-five days to make his designation. (Doc. 86). The second was a purported expert designation, which was a list of experts Wilborn designated "subject to their review of all discovery materials and approval, and subject to revision and/or substitution of

this designation," as well as "any other expert witness identified after this filing." (Doc. 87). On October 7, 2016, finding the latter document "so non-committal that it cannot reasonably be considered a designation," the undersigned struck it. (Doc. 89 at 2). In the same order, the undersigned granted Wilborn an additional thirty days to designate his expert, notwithstanding it did not appear Wilborn had been diligent in seeking out an expert. (*Id.* at 2-3).

On November 4, 2016, Wilborn provided another status update. (Doc. 97). In that update, Wilborn submitted a number of attempts to communicate with attorneys, none successfully securing one as an expert witness. (*Id.*). Wilborn requested an additional thirty days to designate his expert. (*Id.*). The undersigned granted that request. (Doc. 99).

On December 16, 2016, Wilborn designated Dennis W. Hartley ("Hartley") as an expert witness. (Doc. 100). Wilborn also designated Mark I. Harrison and Scott Harwell, but acknowledged neither had been retained; Harrison could not be retained until Wilborn secured counsel, and Harwell could not be retained until his fee was paid. (*Id.*). Wilborn attached a letter from Hartley in which Hartley stated he had agreed to provide an expert report. (Doc. 100-1). Wilborn also filed a supplement to his designation on December 21, 2016, in which he attached an additional letter from Hartley dated prior to Wilborn's expert designation deadline and confirming Hartley's agreement to review the discovery concerning Wilborn's former counsel's performance. (Doc. 101).

On March 6, 2017, in an omnibus order, the undersigned denied Defendants' motion to strike Wilborn's expert designation, (doc. 102). (Doc. 108 at 11-12). In the same order, the undersigned disposed of the pending motions to compel and quash. (*Id.* at 1-10).

### C. Subsequent Discovery Issues and Appeal

On March 17, 2017, Wilborn renewed his motion to compel production by Hodge. (Doc. 109). Hodge responded with a motion to quash. (Doc. 115). After briefing on the motion, (docs. 117, 118, 119, 120, 121 & 122), and a telephone conference, the undersigned denied Wilborn's motion to compel on June 12, 2017. (Doc. 125). In that order, the undersigned found, pursuant to the limited review available under the "exceedingly deferential" standard under which a district court must review a federal agency's refusal to produce material in response to a third-party subpoena, *see Miccosukee Tribe of Indians of Florida v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009), that the U.S. Attorney's Office had not abused its discretion under Department of Justice regulations by declining to produce much of the material Wilborn had requested. (Doc. 125 at 6-7). Rejecting Wilborn's request for a protective order to alleviate the U.S. Attorney's Office's concerns in producing the material, the undersigned noted that, although Wilborn had premised his need for the information he sought (i.e., the discovery in his criminal case) on his inability to submit an expert report without it, he had never explained in any way the material's relevance to the allegations in this case, which is premised on postconviction representation by different counsel. (*Id.* at 9-10).

Following this order, the undersigned entered a new scheduling order. (Doc. 127). After Wilborn requested on August 7, 2017, the scheduling order be modified due to his inability to review discovery material due to FCI Estill policies, his inability to communicate with his expert due to issues with the facility's copy machine, and closures to the law library and word processing equipment, (*see* doc. 130), the undersigned modified that scheduling order on October 5, 2017. (Doc. 133). As a result, Wilborn's expert reports under Fed. R. Civ. P. 26(a)(2)(B) were due by December 8, 2017, and the dispositive motion deadline was extended to February 8, 2018. (*Id.*).

On December 11, 2017, this court received a notice of interlocutory appeal, ostensibly filed by Wilborn on August 9, 2017. (Doc. 142). The notice, which Wilborn had filed in the Eleventh Circuit, was stamped "December 1, 2017." (*Id.*). The subject of Wilborn's appeal was the undersigned's June 12, 2017, denial of his motion to compel, (doc. 125).

With the appeal pending, Defendants filed the instant motion for summary judgment, premised on Wilborn's failure to come forward with expert testimony, on February 6, 2018. (Doc. 158). The undersigned set a briefing schedule on the motion, with Wilborn's response due by February 27, 2018. (Doc. 159). On February 12, 2018, citing the appeal, Wilborn moved to suspend all deadlines. (Doc. 160). Wilborn also stated he had not received a copy of the motion for summary judgment. (*Id.*). Although the undersigned noted that the appeal was likely frivolous because the Eleventh Circuit lacked jurisdiction over it and that the appeal only questionably related to the motion for summary judgment, on February 21, 2018, the undersigned granted Wilborn's motion to the extent Wilborn's response deadline was suspended during the pendency of the appeal. (Doc. 162). Two days later, on February 23, 2018, the Eleventh Circuit *sua sponte* dismissed Wilborn's appeal for lack of jurisdiction. (Doc. 163).

### D. Wilborn's Response to the Motion for Summary Judgment

On February 28, 2018, the court received a motion for an extension of time to respond to the motion for summary judgment filed by Wilborn on February 22, 2018, prior to receiving either the order suspending the response deadline or the Eleventh Circuit's order. (Doc. 164). In that motion, Wilborn again stated he had not received a copy of the motion for summary judgment. (*Id.*). On March 5, 2018, the undersigned received correspondence from counsel for Defendants to Wilborn, enclosing another copy of the motion for summary judgment; that correspondence was made a part of the record. (Docs. 165 & 165-1). The undersigned then set a telephone conference

to discuss Wilborn's issues receiving mail from the court and from Defendants, as well as a deadline to respond to the motion for summary judgment.  (Doc. 166).

Prior to the telephone conference, on March 13, 2018, Wilborn moved again to stay all deadlines in this case, citing the fact he had filed a motion to reconsider in the Eleventh Circuit and arguing he should be permitted a stay until at least the expiration of time to petition the United States Supreme Court for a writ of certiorari.[6]  (Doc. 167).  At the March 21, 2018, telephone conference, Wilborn informed the court he had finally received a copy of the motion for summary judgment.  Wilborn requested twenty-one additional days to respond to the motion for summary judgment.  The same day, the undersigned denied the motion to stay but granted Wilborn thirty days — nine more than he had requested — to oppose the motion for summary judgment; this made Wilborn's response due by April 20, 2018.  (Doc. 168 at 1).  To address Wilborn's alleged difficulties receiving mail from the court, and consistent with Wilborn's representations and the representations of the Bureau of Prisons ("BOP") for how mail is to be designated as legal mail, the undersigned directed the Clerk to designate the order "Legal Mail — Open only in the presence of the inmate."  (*Id.* at 2).  No opposition to the motion for summary judgment was timely received by the court.

On May 18, 2018, the undersigned received an email from counsel for the BOP regarding Wilborn's attempts to schedule depositions, which was made a part of the record.  (Docs. 171 & 171-1).  Wilborn moved for leave to respond to the email on May 22, 2016, and in that motion stated he had not received a copy of Defendants' reply to his response in opposition to their motion for summary judgment, which he stated was "currently before the Court."  (Doc. 173 at 2-3).

---

[6] The Eleventh Circuit denied Wilborn's motion to reconsider on May 7, 2018.  (Doc. 169).

Noting that the court had not received a copy of Wilborn's response and that it was not before the court, the undersigned provided Wilborn until June 13, 2018 to refile his response. (Doc. 174). Again, this order was marked "Special Mail — Open only in the presence of the inmate."[7] (*Id.* at 1).

Rather than refiling his response, on June 12, 2018, Wilborn filed a "Supplemental Response in Opposition to Motion for Summary Judgment." (Doc. 175). That supplemental response stated: "Mr. Wilborn does <u>not</u> wish to waive, or forfeit, any argument that the Defendants have waived, or forfeited, their right to respond by failing to timely file a reply to Mr. Wilborn's response in opposition to motion for summary judgment." (*Id.* at 1-2) (emphasis in original). Wilborn further purported to "incorporate by reference herewith his response in opposition to motion for summary judgment, (ECF No. [unk.]), and simply supplements his all-inclusive response in opposition to summary judgment, pages 23-24, related to his inability to conduct video depositions." (*Id.* at 2). The remainder of the supplemental response addressed only Wilborn's difficulties in obtaining video depositions. (*See id.* at 2-5).

On June 26, 2018, the undersigned set a final deadline for Wilborn to refile his response.

---

[7] In the intervening period between this order and the previous memorandum opinion, Wilborn filed a motion to treat mail originating from this court as legal mail. (Doc. 169). Wilborn attached a decision in an inmate complaint appeal in which the BOP stated: "As explained to you in the Warden's response, staff are now trained to treat mail from the Clerk of the Courts as 'Special/Legal' mail as long as it is properly marked 'Special Main [sic]-Open only in the presence of the inmate.'" (*Id.* at 10). Although both "Legal Mail" and "Special Mail" are apparently interchangeable to designate a piece of mail as legal mail, (*see id.*), the undersigned adopted the "Special Mail" formulation to fully conform to the BOP's explanation.

Wilborn has filed a motion contending the Clerk has failed to label mail consistent with the undersigned's directives and requesting the undersigned compel the Clerk to do so. (Doc. 189). That motion is **GRANTED** to the extent that the undersigned will continue to direct the Clerk to label mail "Special Mail — Open only in the presence of the inmate."

(Doc. 176). That order stated:

> As explicitly stated in the May 30, 2018 order Wilborn references, "[t]he Court has received no opposition to Defendants' motion for summary judgment as of the date of this Order." (Doc. 174 at 1). Nor has it received Wilborn's response since that date. There is no "all-inclusive response in opposition to summary judgment" to supplement, nor to incorporate by reference. As it stands, per the docket in this case, Defendants' motion for summary judgment is unopposed.
>
> [. . .]
>
> Assuming the accuracy of Wilborn's earlier representations he has filed a response that the Court has simply not received, Wilborn has ignored the undersigned's instructions to resubmit that response, and has instead simply attempted to incorporate it by reference, apparently to deny Defendants the opportunity to submit a reply brief. This does not help Wilborn at all with his primary problem, which is that the undersigned cannot consider material that has not been received by the Court.
>
> **Although Wilborn has failed to comply with the instructions in the previous order, Wilborn will receive one final additional opportunity to resubmit his response to the motion for summary judgment. He must do so by July 10, 2018. Wilborn is advised this is his last opportunity to put his response before the Court. If Wilborn fails to submit a response by the deadline, the undersigned will treat Defendants' motion for summary judgment as unopposed and will rule on it accordingly.**

(*Id.* at 1-3) (emphasis in original). The undersigned also directed Defendants to file a status report indicating whether they had received Wilborn's response. (*Id.* at 3). Once again, this order was marked "Special Mail — Open only in the presence of the inmate." (*Id.*). Defendants filed a status report on July 2, 2018, indicating they had not received Wilborn's response, (doc. 177), and on September 13, 2018, with no response from Wilborn before the court, the undersigned granted Defendants' motion and dismissed the case, (docs. 178 & 179).

On October 3, 2018, Wilborn moved to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). (Doc. 181). Wilborn argued the undersigned had erroneously failed to consider his response, which he stated had been filed on April 20, 2018. (*Id.* at 2). Wilborn supported this

contention with an affidavit and with a copy of his request to prison authorities to send legal mail weighing more than sixteen pounds. (*Id.* at 8-10). Along with the Rule 59(e) motion, Wilborn submitted a copy of his response to the motion for summary judgment. (Doc. 182 and exhibits). Although Wilborn had been neither candid nor diligent in dealing with the issue of the response, the undersigned was bound by clear Eleventh Circuit law that "once it is factually established that a prisoner submitted a filing to prison authorities, it is immaterial that he was not diligent in ascertaining what happened to it." (Doc. 185 at 4) (citing *Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006)). Accordingly, the undersigned granted Wilborn's motion and vacated the memorandum opinion and dismissal order. (*Id.*). The undersigned provided Defendants additional time to file a reply brief, which they have now filed, (doc. 188). Fully briefed, the motion for summary judgment is now ripe for review.

### III. Summary Judgment Facts[8]

In December 2011, Wilborn was indicted for conspiracy to distribute methamphetamine and distribution of methamphetamine. (Doc. 158-1 at ¶ 3). *See also USA v. Wilborn, et al.,* Case No. 4:11-cr-00470-VEH-HNJ. Wilborn was represented in that proceeding by Robert Tuten ("Tuten"), an attorney unaffiliated with Defendants. (Doc. 158-1 at ¶ 3; doc. 182 at 5). Wilborn entered into a plea agreement on those charges, under the terms of which he agreed to plead guilty to the conspiracy charge and serve 240 months in prison. (Doc. 158-1 at ¶ 4).[9]

---

[8] These facts are undisputed or, if disputed, taken in the light most favorable to Wilborn.

[9] Wilborn adds Tuten "induced Mr. Wilborn to plead guilty by assuring him that he would receive 'no more time than what [he'd] done right here in the county.'" (Doc. 182). However, the language Wilborn quotes is his own question to Tuten; Tuten responds "I remember, and you know unless something's come up, you know, some stuff going on that we don't know about yet. It's possible. I don't know what's happening, but . . . ." (Doc. 182-1 at 6).

Wilborn pleaded guilty and began his sentence, after which he retained Trant, who is a partner in the Firm, to represent him in a postconviction proceeding under 28 U.S.C. § 2255 to vacate or reduce his sentence. (*Id.* at ¶ 5). Trant told Wilborn he would "be home in 18-24 months if [Wilborn] retained [Trant.]" (Doc. 182-2 at 3). Trant required Wilborn to pay a $20,000.00, non-refundable retainer. (*Id.*).

Trant researched the viability of a § 2255 motion under the facts of the case. (*Id.* at ¶ 6). Based on his experience, research, and professional judgment, Trant determined a motion to vacate would have a reasonable chance of success and would not otherwise prejudice Wilborn. (*Id.* at ¶ 8). The motion contained the following grounds for relief: (1) Wilborn's sentence was excessive; (2) Wilborn's criminal history was incorrectly calculated at sentencing; (3) Wilborn's counsel was ineffective at both the plea and sentencing hearing; and (4) only one of Wilborn's three prior felony drug convictions set out in the 21 U.S.C. § 851 information[10] was "prior" to the offense conduct of the conspiracy, and, therefore, the wrong mandatory statutory enhancement was applied. (Doc. 182-4 at 12).[11]

The motion was ultimately unsuccessful. (Doc. 158-1 at ¶ 9). In relevant part, Judge Hopkins held all of Wilborn's grounds for relief but his ineffective assistance of counsel claims

---

[10] 21 U.S.C. § 851(a)(1) provides that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." Wilborn has attached the information to his response. (Doc. 182-3)

[11] The § 2255 motion is not part of the summary judgment record and is under seal in the § 2255 proceeding. *See Wilborn v. United States of America*, Case No. 4:13-cv-08050-VEH (N.D. Ala.) at docs. 1 & 27. These characterizations of the issues raised in the motion are taken from District Judge Virginia E. Hopkins' memorandum opinion denying the § 2255 motion, (doc. 182-4), which Wilborn has submitted along with his response.

were barred by Wilborn's plea agreement; Wilborn had been advised of his potential sentence at his plea colloquy, and did "not even <u>allege</u> that, had his counsel told him that he faced a maximum sentence of life imprisonment, he would not have pleaded guilty," each of which foreclosed any argument that his plea was the product of ineffective assistance of counsel. (Doc. 182-4 at 19-21) (emphasis in original). Further, Wilborn's argument his counsel was ineffective by failing to object to prior convictions used to enhance Wilborn's sentence — which boiled down to a contention his "prior convictions (neither of which were appealed) became final during the period that the conspiracy was in effect, they necessarily could not have been final because the Petitioner was part of a long-running drug trafficking conspiracy" — was "foreclosed by binding precedent in this circuit." (*Id.* at 28-35).

## IV. Analysis

Wilborn's amended complaint is founded on the allegation he hired Trant for his § 2255 proceeding based on Trant's misrepresentation to Wilborn he would receive a substantial reduction in his sentence. (Doc. 3 at ¶ 11). However, Trant failed to uncover in his research binding circuit precedent that foreclosed the arguments he made in the § 2255 motion. (*Id.* at ¶¶ 12-19). The district court denied the § 2255 motion on this basis, as well as because Wilborn had affirmatively waived his right to appeal and to collaterally attack the plea agreement. (*Id.* at ¶ 19). On these allegations,[12] Wilborn asserts a count under the Alabama Legal Service Liability Act, (*id.* at ¶¶ 27-

---

[12] Wilborn insists that the issues raised in this case also include "whether the attorney's failure to obtain discovery from former counsel and/or the U.S. Attorney's Office during the post-conviction proceedings violated the applicable standard of care . . . and whether the attorney breached the standard of care in misrepresenting his qualifications to the client." (Doc. 182 at 2-3). Even liberally construing Wilborn's amended complaint, these allegations are not reflected anywhere in it. (*See generally* doc. 3). The amended complaint contains no factual allegations

32); a declaratory judgment count seeking to allow him the opportunity to file a second or successive § 2255 claim, (*id.* at ¶¶ 33-41); a fraudulent misrepresentation count, (*id.* at ¶¶ 42-50); a conversion count, (*id.* at ¶¶ 51-54); a negligence count, (*id.* at ¶¶ 55-58); a breach of contract count, (*id.* at ¶¶ 59-65); a wantonness count, (*id.* at ¶¶ 66-69); and a negligent infliction of emotional distress count, (*id.* at ¶¶ 70-74).

Although Wilborn's complaint nominally contains separate counts, each is centered on Defendants' legal malpractice. Under Alabama law, legal malpractice claims are governed by the

---

regarding discovery, and Wilborn's only mention of Trant's qualifications are an allegation that Defendants "held themselves out as *Criminal Post-Conviction Remedies Specialists*," (doc. 3 at ¶ 25), accompanied by an allegation Defendants "failed to use such reasonable care and skill and diligence that other similar service providers practicing as a specialist, in the same general line of practice in the same general area, ordinarily have and exercise in a like case," (*id.* at ¶ 28). This latter quote is simply a recitation of the standard of care applicable to specialists — as Wilborn himself cites in his response, (*see* doc. 182 at 13) (citing ALA. CODE § 6-5-580) — not an allegation of misrepresentation. Wilborn may not assert new theories of liability in response to summary judgment. *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012). Instead, "[a]t the summary judgment stage, the proper procedure for [a plaintiff] is to amend [his] complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

The undersigned notes Wilborn has previously attempted to amend his complaint, arguably consistent with the theory that Defendants committed malpractice by failing to obtain discovery from Wilborn's trial counsel. (*See* doc. 134). In that motion, Wilborn sought leave to amend his complaint to add two additional causes of action to the complaint, one of which contained a conclusory statement that Defendants "breached their duty . . . to obtain discovery from previous counsel." (*Id.* at 3). The undersigned denied that motion. (Doc. 172 at 1-5). Specifically, the undersigned found the counts were redundant of Wilborn's Alabama Legal Service Liability Act count, and no factual allegations in the complaint supported the brief and conclusory reference to obtaining discovery from Wilborn's previous counsel; thus, the amendment would have been futile. (*See id.* at 5 n.1).

At no point has Wilborn requested leave to amend his complaint to include any factual allegation to support either new theory. To the extent Wilborn's response can be construed to contain a request for leave to amend his complaint out of time to include facts to support these theories, it is **DENIED**.

Alabama Legal Service Liability Act, ("ALSLA"), ALA. CODE § 6-5-570 *et seq.* The ALSLA specifically provides: "[t]here shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein." ALA. CODE § 6-5-573. "The [A]LSLA 'embraces'—and thus supersedes—every 'form of action in which a litigant may seek legal redress for a wrong or an injury and *every legal theory of recovery*, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future'" for legal malpractice. *Free v. Lasseter*, 31 So. 3d 85, 89 (Ala. 2009) (quoting ALA. CODE § 6-5-572(1)) (emphasis in original). Therefore, regardless of the theories of recovery his complaint purports to assert, Wilborn's only claim against Defendants is a single legal service liability action under § 6-5-573.[13] *See id.* (holding that common-law claims and declaratory judgment claim arising out of legal services must be recast as a unitary cause of action under the ALSLA).

To prove legal malpractice under Alabama law, a plaintiff must prove the same elements that must be proven in an ordinary negligence suit: a duty, a breach of that duty, an injury, that the injury was proximately caused by the breach, and damages. *Independent Stave Co. v. Bell, Richardson & Sparkman, P.A.*, 678 So. 2d 770, 772 (Ala. 1996). Under the ALSLA, breach is shown by a legal service provider's failure to adhere to the standard of care. *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1190 (N.D. Ala. 2012) (citing *Independent Stave*, 678 So. 2d at 772). The ALSLA sets out that "[t]he applicable standard of care

_____

[13] As described above, *see supra*, n.12, on May 21, 2018, the undersigned denied Wilborn leave to amend his complaint to add a count of unjust enrichment and a count of breach of fiduciary duty on the basis the amendment would be futile; both proposed counts would be duplicative of the ALSLA count already contained in his amended complaint, (doc. 3 at ¶¶ 27-32). (Doc. 172 at 1-5).

against the defendant legal service provider shall be such reasonable care and skill and diligence as other similarly situated legal service providers in the same general line of practice in the same general area ordinarily have and exercise in a like case." ALA. CODE § 6-5-580(1).

## A. Necessity for Expert Testimony

Alabama law generally requires expert testimony to show that a defendant attorney's specific actions breached the standard of care. *Green v. Ingram*, 794 So. 2d 1070, 1072 (Ala. 2001). Consequently, "[w]hen a defendant in a legal malpractice action has moved for a summary judgment and has properly supported the motion with evidence that makes a prima facie showing that the defendant did not act negligently, then, in order to defeat the summary judgment motion, the plaintiff must rebut the defendant's prima facie showing with expert testimony indicating that the defendant lawyer did act negligently." *McDowell v. Burford*, 646 So. 2d 1327, 1328 (Ala. 1994). The only exception to this rule is the "common knowledge" exception, where the breach of the standard of care "is so apparent as to be understood by a layperson and [would] require[] only common knowledge and experience to understand it." *Valentine v. Watters*, 896 So. 2d 385, 394 (Ala. 2004).

Defendants have supported their motion with Trant's affidavit, (doc. 158-1). In that affidavit, Trant states he has been a practicing attorney since 1978 and has personally had success having sentences of clients reduced and/or vacated in cases similar to Wilborn's. (*Id.* at ¶¶ 2, 7). Trant further states, based on his research and experience, he made the professional determination that "a motion to vacate had a reasonable chance of success, and would not otherwise prejudice Wilborn if it was not successful." (*Id.* at ¶ 8). Based on his experience as an attorney with approximately forty years of experience practicing criminal law, Trant opines his representation of Wilborn satisfied the ALSLA standard of care. (*Id.* at ¶ 11). This is sufficient to make out a

*prima facie* case of non-negligence and shift the burden to Wilborn to produce expert evidence of

a breach of the standard of care, assuming the "common knowledge" exception does not apply.[14]

Defendants assert this is not the type of case in which the "common knowledge" exception

applies, and therefore Wilborn must oppose the motion for summary judgment with expert

testimony.  (Doc. 158 at 9-10).  In rebuttal, Wilborn argues whether he would have prevailed in

the underlying § 2255 litigation is within the understanding of the jury, and he is therefore not

required to present expert testimony on the issue.  (Doc. 182 at 20).  To support this, Wilborn cites

*Valentine*, 896 So. 2d at 394, a factually distinguishable case.  In *Valentine*, the attorney's alleged

breaches were failing to timely file paperwork to participate in multi-district litigation (which

affected the client's registration status and resulted in fewer available benefits) and

misrepresenting to the client that he had represented other clients in similar cases.  *Id.* at 387 n.1,

_____

[14] Wilborn quotes *Free*, 31 So. 3d at 89, for the proposition "Defendants have 'utterly failed to make out a prima facie showing on the issue of breach of the standard of care for a legal service provider," by "present[ing] no argument or evidence as to the dispositive issue of the standard of care under § 6-5-572(3)(a), or the breach of that standard under § 6-5-572(4)," meaning that they never successfully shifted the burden to him.  (Doc. 182 at 4) (some internal punctuation altered).  Wilborn never fleshes out this argument, but does state "[t]he Defendants present <u>no</u> evidence, other than Douglas A. Trant's self-serving affidavit, that '[They] have previously been successful in having sentences vacated and/or modified with similar arguments'" to those made in Wilborn's § 2255 proceeding.  (Doc. 182 at 6) (emphasis in original).  To the extent Wilborn intends to found his challenge to Defendants' *prima facie* case on a dispute over the adequacy of Trant's affidavit, Alabama courts have permitted an attorney accused of malpractice to make out a *prima facie* case of non-negligence by offering his own affidavit as expert testimony.  *See Peoples v. Nassaney*, 638 So. 2d 879, 880 (Ala. 1994) (burden shifted to plaintiff client to produce expert testimony based on attorney's own affidavit that he "provided [the client] with competent legal representation, at all times giving him the benefit of [the attorney's] experience, diligence, and skill as a criminal defense attorney").  Further, there appears to be no federal barrier to a party serving as his own expert.  *See, e.g., Malloy v. Monahan*, 73 F.3d 1012, 1016 (10th Cir. 1996) (allowing expert testimony from plaintiff on sufficient showing of expertise).  Conversely, in *Free*, the defendant presented no evidence at all regarding professional negligence or the applicable standard of care, simply ignoring that portion of the plaintiff's claim.  31 So. 3d at 88.

394.  The court held "[f]ailure to timely file an action is a matter within the common knowledge of the average layperson," as is the issue of whether an attorney misrepresented his qualifications.[15] *Id* at 394.  This case, though, involves Trant filing what Wilborn alleges was a meritless § 2255 motion and misrepresenting to Wilborn that the motion would result in a substantial reduction in Wilborn's sentence.  The logical result of this claim is that Wilborn would have to prove the § 2255 motion was in fact meritless and, as a result, could not have led to the substantial reduction Trant claimed.  *See id* at 394 n.5 (noting a party must essentially prove, as a "case within a case," the merits of the underlying legal issue).  In other words, the issue in this case is whether Trant appropriately exercised his professional judgment in the § 2255 proceeding.  *Cf. Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C.*, 42 So. 3d 667, 684 (Ala. 2009), *as modified on denial of reh'g* (Jan. 22, 2010).  As Wilborn admits, (*see* doc. 182 at 20-21), this would necessarily involve delving into the nuances of federal postconviction proceedings, the applicability of the waivers in Wilborn's plea agreement, and whether the arguments raised in the § 2255 motion were the type an attorney would not have made had he employed reasonable care, skill, and diligence, none of which are within common knowledge and experience — and none of which are remotely comparable to the non-complex scenarios in which Alabama courts have applied the exception.

---

[15] As stated *supra*, n.12, Wilborn's response argues that Trant's misrepresentation of his qualifications is at issue here despite the total absence of this allegation from his amended complaint, and he again cites *Valentine* to suggest he is not required to present expert evidence on this issue.  (Doc. 182 at 22-23).  Even assuming his amended complaint contained facts regarding this allegation and that no expert evidence would be necessary to support it, Wilborn has identified no <u>non-expert</u> evidence of misrepresentation that could create a factual dispute as to Trant's credentials, either.  Instead, Wilborn has simply pointed to evidence indicating Trant held himself out as a specialist in post-conviction proceedings.  (Doc. 182 at 2) (citing doc. 182-22).  In *Valentine*, by contrast, there was conflicting evidence as to whether the defendant attorney told the client that he had represented other clients in litigation similar to hers, later admitting that he had not.  896 So. 2d. at 394-95.

*See, e.g., Guyton v. Hunt*, 61 So. 3d 1085, 1090 (Ala. Civ. App. 2010) (failing to notify the client of a ruling on a motion in time for the client to timely file an appeal); *Roberts v. Lanier*, 72 So. 3d 1174, 1187 (Ala. 2011), *as modified on denial of reh'g* (June 10, 2011) (misrepresenting to a client that a non-refundable retainer was enforceable under Alabama law when it was undisputedly unenforceable).  Consequently, the exception is inapplicable, and Wilborn is required to present expert testimony in order to prevail in this case.

### B. Wilborn's Lack of Expert Testimony

Defendants allege Wilborn has failed to provide an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B) by his December 8, 2017 deadline to do so.[16]  (Doc. 158 at 10).  That Rule requires that an expert disclosure be accompanied by:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the data or other information considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

---

[16] As described above, Wilborn designated an expert in December 2016 in compliance with a series of orders.  Nothing in those orders absolved Wilborn of the obligation to submit an expert report under the Rule.  To the contrary, the undersigned noted Wilborn was not required to submit a "report under Fed. R. Civ. P. 26(a)(2)(B) <u>at this time</u>."  (Doc. 89 at 3) (emphasis added).  Wilborn's designation specifically stated Hartley's expert report, "which conforms to all the requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, will be disclosed in accordance with further directives of this honorable Court," (doc. 100 at ¶ 1), and Wilborn included similar language as to the experts whom he was then exploring the option of retaining, (*id.* at ¶¶ 2-3).  Hartley's letter to Wilborn also sets out that he expects to provide an expert report.  (Doc. 100-1 at 1).  When Defendants challenged Wilborn's expert designation, the undersigned noted "[t]he intention behind the requirement [to designate an expert], as heavily implied by several of the undersigned's orders, was to ensure Wilborn could make a threshold showing he had secured the services of an attorney who could, at least debatably, provide an opinion as to the standard of care."  (Doc. 108 at 12).  Finally, the amended scheduling order explicitly includes a deadline for "disclosures of expert witnesses—including a complete report under Fed. R. Civ. P. 26(a)(2)(B) from any specially retained or employed expert," (doc. 127 at 1), and the order amending the scheduling order retains this language, (doc. 133 at 3-4).

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B). A party who "fails to provide information . . . as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (upholding district court's refusal to allow expert witnesses to testify at trial when their reports were inadequate under Rule 26(a)(2)(B)); *Cooper v. Southern Company*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (affirming exclusion of expert witness's testimony when no report in compliance with Rule 26(a)(2)(B) was provided).

Wilborn does not deny he failed to provide an expert report by the deadline. Instead, he offers three primary justifications for that failure. First, he states his November 7, 2017 motion to suspend scheduling order dates, (doc. 135), (which remained pending at the time Wilborn filed his response) excused his lack of compliance. (Doc. 182 at 8-9). Second, Wilborn argues he has been precluded from conducting video depositions by the BOP. (*Id.* at 23-24). Finally, Wilborn has attached an affidavit — but not a report compliant with Rule 26(a)(2)(B) — from Hartley, in which Hartley declines to offer an opinion on Defendants' alleged breach of the standard of care.[17] (Doc.

---

[17] Wilborn also briefly contends he has been thwarted by this court from submitting an expert report. Wilborn's response to the motion for summary judgment states "[o]n November 3, 2016, Mr. Wilborn requested the Court to appoint an expert witness. (ECF No. 95). On November

182-23). Wilborn contends this affidavit supports his contention that he could not provide an expert report without the discovery he sought from Hodge. (Doc. 182 at 14-17).

At the outset, Wilborn's motion to suspend the scheduling order's dates made absolutely no mention of difficulties in submitting an expert report beyond Wilborn's statement he was "unable to ascertain whether expert witness testimony would apply to . . . additional 'causes of action, defenses, or parties'" he may choose to add based on Defendants' insurance policy (which Wilborn stated had not been produced to him). (*See* doc. 135 at 1-2). Although the undersigned ultimately denied the motion on May 21, 2018, (doc. 172), after the Eleventh Circuit denied Wilborn's request for the panel to reconsider the dismissal of his interlocutory appeal, Wilborn might have an argument the motion to suspend excused a <u>late</u> expert report. However, as discussed below, Wilborn has not provided an expert report at all, so there is no untimely expert report to excuse.

Next, in both his response and supplemental response, Wilborn cites his inability to conduct video depositions. (*See* doc. 182 at 23-24; doc. 175 at 2-5). Neither affects Wilborn's ability to

---

16, 2016, this Court denied Mr. Wilborn's motion to appoint an expert. (ECF No. 98))." (Doc. 182 at 19). Wilborn further states, due to his indigency, that it would be an abuse of discretion "if [the court] now grants summary judgment based on a failure to produce an expert witness report." (*Id.*). This misstates both the nature of Wilborn's request and the order denying it. Wilborn specifically requested government funding for "<u>the search for</u> and cost of" a number of specifically-identified subject matter experts, which Wilborn estimated at $25,000.00. (Doc. 95 at 2-3). To support this request, Wilborn cited *McKinney v. Anderson*, 924 F.2d 1500 (9th Cir. 1991), a Ninth Circuit case dealing with apportioning fees for appointed counsel under Rule 706. Denying that motion, the undersigned concluded "Wilborn is <u>not seeking the appointment of an expert by the Court</u>; he is asking the Court to require the United States to foot the bill for his self-selected expert." (Doc. 98 at 2). Wilborn never challenged this determination. Nor does Wilborn's argument make sense, even assuming the undersigned erroneously determined Wilborn was not requesting an appointed expert; Wilborn's lack of an expert report is not due to his lack of an expert.

present expert testimony. The supplemental response (which includes the same argument as the response) details Wilborn's efforts to set up video depositions at FCI Estill, dating back to June 2016. On June 22, 2016, the undersigned granted Wilborn's motion for leave to take depositions by video. (Doc. 58). Wilborn indicates he attempted to find out the procedures for doing so on July 1, 2016, but was ultimately informed by BOP Counselor Sheila A. Smith that he could not do so. (Doc. 175 at 2-3). Wilborn's supplemental response does not contain any information about any further efforts to set up depositions by videoconference until February 15, 2018, when he discovered that hearings are routinely conducted at FCI Estill by videoconference. (*Id.* at 3). From there, Wilborn states he attempted to complete the required form to set up depositions, but encountered numerous roadblocks set up by the BOP. (*Id.* at 3-4).

Wilborn pointed to potential difficulties with setting up depositions in a motion to clarify on July 5, 2016. (Doc. 63). The undersigned addressed this motion on March 6, 2017, stating the parties were expected to resolve logistical issues among themselves, but "[i]f the Bureau of Prisons requires an order beyond what the Court has previously entered, Wilborn may move for such an order when the prospect becomes more than hypothetical." (Doc. 108 at 11) (emphasis added). Wilborn never presented the issue to the court again until his response, which, even if the court had actually received it when Wilborn mailed it, was filed on April 20, 2018. Additionally, both the response and supplemental response largely concerns events that happened after the February 8, 2018 discovery deadline, (*see* doc. 133), had passed. (*See* doc. 182 at 23-24; doc. 175 at 2-5). Wilborn does not account at all for the thirteen-month period between the order and the response, during which he knew that FCI Estill had denied him the ability to conduct depositions by videoconference. And, more importantly for the sake of this motion, neither Wilborn's response

nor his supplemental response connects the issues with depositions to his lack of expert testimony.[18]

Wilborn's only remaining argument for why his failure to produce expert testimony in opposition to Defendants' motion is not fatal relies on Hartley's affidavit. In relevant part, Hartley states the following:

> 4. I have reviewed the limited materials that were provided by the U.S. Attorney's Office in response to the subpoena served on them.

> 5. In my professional opinion, as an attorney with approximately 46 years of experience practicing criminal law, I cannot author an opinion as to whether Douglas A. Trant's (hereinafter referred to as "Mr. Trant") representation of Mr. Wilborn met and exceeded the standard of reasonable care, skill, and diligence set forth in the Alabama Legal Services Liability Act, Ala, Code § 6-5-580 (1975), et seq., in accordance with Fed. R. Civ. P. 26(a)(2)(B), without access to the EXACT same discovery the United States Attorney's Office provided to Messrs. Trant and Tuten during the criminal and post-conviction proceedings and without running afoul of the Rules of Professional Responsibility.

> 6. In my professional opinion, it would be malpractice and possibly defamation and libel for me to author an opinion on whether or not previous counsels breached the applicable standards of care without having reviewed the very same documents that were provided to Mr. Wilborn's previous counsels.

> 7. Mr. Wilborn's claims against Mr. Trant are intertwined with Mr. Tuten's potential breaches of the applicable standards of care because Mr. Trant was retained for the postconviction proceedings; in essence to review the applicable standards of care utilized by Mr. Tuten. In order to determine whether Mr. Trant breached the applicable standards of care, I would first have to demonstrate that Mr. Tuten breached the applicable standards of care and that Mr. Trant then breached the applicable standards of care by not bringing Mr. Tuten's breaches in the §2255 proceedings.

---

[18] To the extent Wilborn's supplemental response can be construed as a request for leave to conduct discovery after the deadline has passed, and thus as a request to amend the scheduling order out of time, Wilborn has not shown that he failed to file a motion prior to the close of discovery because of excusable neglect, nor that he had good cause for failing to meet the original deadlines. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013); Fᴇᴅ R. Cɪᴠ. P. 6(b)(1)(B). Therefore, that request is **DENIED**.

8. It is impossible for me, or any other practitioner, to opine, pursuant to Fed. R. Civ. P. 26(a)(2)(B), that an attorney breached the applicable standards of care without reviewing the evidence provided by the U.S. Attorney's Office in discovery in toto.

(Doc. 182-23 at 1-2).

The only conceivable way Hartley's contention that "[i]n order to determine whether Mr. Trant breached the applicable standards of care, [Hartley] would first have to demonstrate that Mr. Tuten breached the applicable standards of care and that Mr. Trant then breached the applicable standards of care by not bringing Mr. Tuten's breaches in the § 2255 proceedings" would make sense would be if Wilborn alleged Defendants had failed to bring some meritorious ineffective assistance of counsel claim in the § 2255 proceeding. Wilborn does not, and he has never requested leave to amend his complaint to bring such a challenge. Hartley's affidavit seems to sidestep the actual content of Wilborn's claims.

As stated above, even reading the amended complaint broadly, Wilborn's <u>only operative theories</u> are that Trant breached the standard of care by (1) filing a § 2255 motion that was frivolous because it failed to account for binding circuit precedent and the waivers in Wilborn's plea agreement and (2) misrepresenting to Wilborn the § 2255 motion would lead to a substantial reduction in his sentence. Neither theory has any connection to any action by Wilborn's trial counsel. As for the first, although neither party sets it out, the constitutional standard to prove ineffective assistance of counsel clears up the matter. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) that he was prejudiced by his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). There is no apparent dispute or argument about Tuten's specific acts (e.g., whether he failed to object to the

§ 851 information). Instead, to the extent Tuten's ineffectiveness is at issue, it is solely because of how Trant approached the second prong of the *Strickland* inquiry: whether the frivolous § 2255 motion supported prejudice to Wilborn. Wilborn alleges Trant's failure to uncover the circuit precedent through his own research and/or adequately review Wilborn's plea agreement led to portions of Wilborn's § 2255 motion being meritless <u>as a matter of law</u>; circuit precedent foreclosed the sentencing-enhancement-based error, and Trant's failure to take into account the plea agreement foreclosed other claims. In other words, Wilborn alleges his § 2255 motion <u>could never have been successful</u> on the theories Trant advocated, irrespective anything the discovery in the criminal case would reveal. Wilborn's second theory relates to Trant's misrepresentation to Wilborn as to the effect of a motion Trant should have known was meritless. Again, is solely about what Trant ought to have known about the merits of the legal theories underpinning § 2255 motion, not anything Tuten did. Nor does either theory depend on the discovery Wilborn has quixotically sought in this case, never explaining (as Hartley himself does not explain) how the discovery connects to the theories of liability actually in play [19] Hartley's affidavit notwithstanding, the undersigned does not see how Hartley was foreclosed from opining about the merits of Trant's <u>legal theories</u> supporting prejudice to Wilborn, as well as a lawyer's duty to research the applicable law and refrain from misrepresenting the likelihood of success of a motion in order to induce payment from a client. Consequently, Wilborn's failure to provide an expert

---

[19] In conclusory terms and — despite repeated invitations from the court — without attempting to explaining the discovery's relevance, Wilborn himself has occasionally stated the missing discovery was an impediment to submitting an expert report. (*See, e.g.,* doc. 120 at 5-6). However, Wilborn never brought Hartley's concerns to the court's attention prior to his response to the motion for summary judgment.

report is not excused by Hartley's affidavit.[20]

There is no evidence in the record to oppose Trant's affidavit. Further, the undersigned finds neither Hartley's affidavit or Wilborn's arguments provide substantial justification for failing to provide an expert report, and Wilborn has made no argument his failure to provide an expert report was harmless beyond invoking the inapplicable "common knowledge" exception. Therefore, even if Wilborn now provided an expert report, under the "unambiguous terms of Rule 37(c)," *see Cooper*, 390 F.3d at 728, any expert testimony Wilborn might offer would be inadmissible at trial due to his failure to timely disclose it. Because Wilborn has not provided (and cannot provide) expert testimony rebutting Defendants' prima facie showing of non-negligence, Defendants' motion for summary judgment is due to be granted.

## V. Conclusion

For the reasons stated above, Defendants' motion for summary judgment, (doc. 158), is **GRANTED**. A separate order will be entered. The Clerk is **DIRECTED** to mail a copy of this memorandum opinion to Wilborn, marked "Special Mail — Open only in the presence of the inmate."

DONE this 17th day of April, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[20] As Wilborn has still not supported the relevance of the discovery in his criminal case, nor challenged the undersigned's independent conclusion the U.S. Attorney's Office has sufficiently complied with its *Touhey* regulations in declining to produce the material, Wilborn's request to revisit his discovery dispute with the U.S. Attorney's Office and reopen discovery, (doc. 182), is **DENIED**.